# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

JULIE CROSS and MISTIE GIBBY,
On behalf of themselves and all
others similarly situated,

      Plaintiff,

v.

440 CORP. d/b/a THE RIDGE-
GREAT STEAKS & SEAFOOD,
STEPHEN CAMPBELL and JANE
CAMPBELL

      Defendants.

CIVIL ACTION NO.
2 06-CV-0191-WCO

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR
## MOTION FOR PARTIAL SUMMARY JUDGMENT

COME NOW Plaintiffs Julie Cross, Mistie Gibby, Amber Koiter, Leslie

Melvin and Brad Butler and hereby file this brief in support of their motion for

summary judgment on the claims: (1) that they were not properly paid the

minimum wage for all hours worked, as a result of the Defendants retaining a

portion of their tips without complying with the requirements for utilizing a tip

credit in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*;  and

(2) that defendant Stephen Campbell[1] is an employer as defined by the FLSA.

## I.  Statement of Facts

Defendant 440 Corporation is the owner of a restaurant known as The

Ridge-Great Steak and Seafood (hereinafter "The Ridge"), which has been in

operation since 1999.[2] The Ridge has consistently employed between thirty to

thirty-five employees. (S. Campbell Dep. at 10, lns. 2-8) In addition, The Ridge

grossed approximately $1.2 million in 2005 and 2006. (S. Campbell Dep. at 49,

lns.18-21)

Defendant Stephen Campbell has always been the Manager of The Ridge.

Defendant Campbell makes all the day to day decisions relating to the operations

of The Ridge. (S. Campbell Dep. at 9, lns. 2-4) (Niec Dep. at 10, lns. 19-21) He

decides all personnel policies, no on else is involved and he did not consult with

anyone else when he developed the restaurant's policies. (S. Campbell at 11, ln.

---

[1] Jane Campbell was formerly a defendant but was dismissed. In this brief, "defendant Campbell" or "Campbell" refers to Stephen Campbell.

[2] Jane Campbell, Stephen Campbell's sister, is 100% shareholder in this corporation, however, she contributes no money to the corporation; has received no money from the corporation during its history, other than an hourly wage when she works at the restaurant; has no role in making policy; has no knowledge of the finance of the corporation; and has no role in day to day operations of the restaurant. (J. Campbell Dep. at 4, lns. 20-25; 5, lns 1-8) (S. Campbell Dep. at 9, lns. 2-10) (Niec Dep. at 114, ln. 25; 115, lns. 1-5)

23-25; 12, ln 1-3; 64, ln. 10-12)

Plaintiffs all worked as servers at The Ridge during the time period of 2003 to 2006. (S. Campbell Dep. at 13, lns. 12-14) (Gibby Dep. at 17, lns. 10-13) (Pla. Ex. 14, 15, 16)[3]

During its entire history, the Ridge has paid its servers less than minimum wage, relying on tips received from customers to make up the difference to minimum wage. Each of the plaintiffs made $2.15 per hour. (Cross Dep. at 33, lns. 12-15, 24-25; 34, lns. 1-4) (Niec Dep. at 61, lns. 13-15) (S. Campbell Dep. at 101, lns. 18-21; 109, lns. 3-4) (Gibby Dep. at 19, lns. 4-10) (Def. Ex. 5, 14, 15, 16)

In addition to the hourly rate they were paid, the plaintiffs and other servers were compensated from customer tips. (Gibby Dep. at 19, lns. 22-24) (Cross Dep. at 20, lns. 14-17) However, defendants did not allow them to retain all tips. Instead, the Ridge kept part of plaintiffs' tips in an amount equal to 2.5% of total food and beverage sales made by the server. (S. Campbell Dep. at 30, lns. 8-10) (Gibby Dep. at 31, lns. 4-7) (Cross Dep. at 47, lns. 14-18) The amount retained by The Ridge did not vary if the plaintiffs and other servers were not paid any tip or

---

[3] Plaintiffs have maintained the exhibit numbers from the depositions taken in this case. Plaintiffs' exhibits 1-13 are all referred to in depositions. Plaintiffs' exhibits 14 and higher are not part of any deposition. When plaintiffs refer to Defendants' Exhibits they are referring to exhibits the defendants used in depositions.

were paid a reduced tip. (Niec Dep. at 11, lns. 15-19) (S. Campbell Dep. at 30, lns. 8-10) (Gibby Dep. at 31, lns. 4-7) (Cross Dep. at 47, lns. 14-18)

The Ridge also retained this portion of the tips even when plaintiffs had no food runners[4] to assist them with serving customers. (Gibby Dep. at 32, lns. 12-21) (S. Campbell Dep. at 25, lns. 9-21; 36, lns. 1-17) The Ridge typically only used food runners on Friday and Saturdays. (S. Campbell Dep. at 92, lns. 6-10) (Gibby Dep. at 32, lns. 24-25; 33, ln. 1) (Cross Dep. at 116, lns. 23-25)

The defendants did not tip out to the hostesses or food runners from the money retained from the servers. (S. Campbell at 14, lns. 1-3) In addition, the defendants did not take into account the amount of money that had been retained when paying the food runners or hostesses. (S. Campbell at 38, lns. 9-13) In fact, defendant Campbell thought it was okay to withhold money from the servers regardless of where the money went. (S. Campbell at 38, lns. 9-19)

The Ridge had no written policy explaining how the tip pool worked or where the retained money went. (Def. Ex. 6) (Niec Dep. at 45, lns. 2-5) (J. Campbell Dep. at 9, lns. 2-6) (S. Campbell Dep. at 64, lns. 1-15) The Ridge also had no written personnel policies or employee handbooks. (S. Campbell at 63, ln.

---

[4]The Ridge employed "food runners" who performed duties similar to "busboys" and their duties were to do whatever was needed to get the customers served, such cleaning tables or sweeping a booth. (S. Campbell Dep. at 36, ln. 18-37, ln. 5)

11- 64, ln. 4; 92)

Defendants' accountant advised The Ridge that any tips that the company retained must be reported as income. (S. Campbell Dep. 19, lns. 3-10) Defendants reported the 2.5% of food and beverage sales retained from the servers' tips as income. (S. Campbell Dep. at 14)

In October, 2006, after plaintiff Cross threatened to file suit, The Ridge, for the first time, gave the servers documents that set forth the tip pool method. (Pla. Ex. 8) (S. Campbell Dep. at 64, lns. 11-15) (Niec Dep. at 45, lns. 2-5) At this same time, the defendants stopped the prior practice of retaining the tips and began distributing the retained tips to the food runners and hostesses.[5] (S. Campbell Dep. at 64, lns. 16-18)

At no time up to the time the Ridge's policy changed in October, 2006, were the food runners or hostesses told they were being paid as part of a tip pool and their pay records do not reflect that they were paid tips. (J. Campbell Dep. at 9) (Pl. Ex. 9, 10, 17, 17) The employees' compensation rate did not vary in any way, as would be expected if they were being paid part of the servers' tips. (S. Campbell Dep. at 24, lns. 12-14)

Up until the October, 2006, change in policy, the retained tips were

---

[5] Plaintiffs do not challenge this changed policy, primarily because they either no longer worked for The Ridge or left the Ridge shortly after this change in policy.

deposited into the Ridge's operating account and on deposit slips were designated as "tips," "tip share," "tips/repairs" or simply "repairs." (Niec Dep. at 13, lns. 10-13; 19, lns. 8-13, 20-24) (S. Campbell Dep. at 13, lns. 23-25; 23, lns. 19-24; 26, lns. 8-20) (Pla. Ex. 3) No explanation has been given for why these retained tips were classified as repairs. (Niec Dep. at 19, lns. 18-19) (S. Campbell Dep. at 26, lns. 10-20) Once this money was deposited into The Ridge's bank account, there is no accounting or record of this money being used for any particular purpose. (S. Campbell Dep. at 38, lns. 14-19)

In 2004, plaintiff Cross spoke with Sandy Niec, the defendant's bookkeeper. Niec was concerned that The Ridge would get sued over its tip pool policy. (Cross Dep. at 70, lns. 22-25; 71, lns. 1-5) Plaintiff Cross began looking into the issue and put together a packet of information which she gave to defendant Stephen Campbell. (Pla. Ex. 2[6]) (Cross Dep. at 58, lns. 21-25; 59, lns. 1-4; 147)

The explanation defendant Campbell gave plaintiff Cross for retaining a portion of the server tips was that he needed the money to pay for the entertainers, bouncers and for other things needed to keep the restaurant open. (Cross Dep. at 75, lns.10) (Def. Ex. 4) He did not tell her that he was sharing the retained tips with

---

[6] Through clerical error this exhibit has a cover referring to "Scott Campbell," instead of Stephen Campbell. However, these are the documents plaintiff Cross gave to defendant Campbell. (Cross Dep. at 147)

the food runners or hostesses. (S. Campbell Dep. at 15, lns. 11-16)

## II.  Argument and Authority

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), "[s]ummary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the non-movant, *who must go beyond the pleadings* and present affirmative evidence to show that a genuine issue of material fact exists.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257 (1986)(emphasis added). Where there is a "complete failure of proof concerning an essential element of the non-moving party's case" summary judgment is appropriate.  *Id.*  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 244-48 (emphasis in original).

### B.    Defendants' Violated The Minimum Wage Provisions Of The FLSA

#### 1.    FLSA minimum wage requirements

The Fair Labor Standards Act, during the relevant time periods, required
every employer to pay each of his employees who in any workweek is engaged in
commerce or in the production of goods for commerce, or is employed in an
enterprise engaged in commerce or in the production of goods for commerce,
wages at the rate of $5.15 per hour.[7]  29 USCA § 206(a).

Another provision of the FLSA, 29 U.S.C. § 203(m), allows employers to
pay less than minimum wage to employees who receive tips.   The mechanism it
creates to allow employers to pay less than minimum wage is the called a "tip
credit."

> In determining the wage an employer is required to pay a tipped employee,
> the amount paid such employee by the employee's employer shall be an
> amount equal to--
>
> **(1)** the cash wage paid such employee which for purposes of such
> determination shall be not less than the cash wage required to be paid such
> an employee on August 20, 1996; and
>
> **(2)** an additional amount on account of the tips received by such employee
> which amount is equal to the difference between the wage specified in
> paragraph (1) and the wage in effect under section 206(a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the
> tips actually received by an employee. The preceding 2 sentences shall not
> apply with respect to any tipped employee unless such employee has been
> informed by the employer of the provisions of this subsection, and all tips
> received by such employee have been retained by the employee, except that
> this subsection shall not be construed to prohibit the pooling of tips among

---

[7]  This rate has since increase to $5.85 an hour. 29 USCA § 206(a).

employees who customarily and regularly receive tips.

29 USCA §203(m).

While the "tip credit" allows for an employer to have a "tip pool," to meets its obligation under the FLSA, the employer must inform the employees that this is the method that is being used and the "tip pool" can only include employees who "customarily and regularly receive tips."[8] See, *Kilgore v. Outback Steaks of Florida, Inc.*, 160 F.3d 294, 298 (6th Cir. 1998)

Finally, employers who compensate their employees through tips and tips shares are required by the FLSA to maintain the following information:

(a) With respect to each tipped employee whose wages are determined pursuant to section 3(m) of the Act, the employer shall maintain and preserve payroll or other records containing all the information and data required in § 516.2(a) and, in addition, the following:

(1) A symbol, letter or other notation placed on the pay records identifying each employee whose wage is determined in part by tips.

(2) Weekly or monthly amount reported by the employee, to the employer, of tips received (this may consist of reports made by the employees to the employer on IRS Form 4070).

(3) Amount by which the wages of each tipped employee have been deemed to be increased by tips as determined by the employer (not in excess of 40 percent of the applicable statutory minimum wage). The

---

[8] Plaintiffs do not concede that defendants' food runners and hostesses are employees who "customarily and regularly receive tips," however, for purposes of summary judgment plaintiff does not challenge the defendants' characterization of these employees as being employees who customarily and regularly receive tips.

amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week.

(4) Hours worked each workday in any occupation in which the employee does not receive tips, and total daily or weekly straight-time payment made by the employer for such hours.

(5) Hours worked each workday in occupations in which the employee receives tips, and total daily or weekly straight-time earnings for such hours.

29 C.F.R. 516.28(a).

The defendants failed to comply with any of the above requirements of the FLSA for using a tip credit to fulfill their obligations to pay minimum wage. Thus, the defendants are required to pay the plaintiffs the full minimum wage and owe plaintiffs the difference between $5.15 per hour and $2.15 per hour, the amount plaintiffs were paid.

### 2. Defendants' violated the FLSA by paying plaintiffs' less than minimum wage while retaining a portion of plaintiffs' tips.

It is undisputed that plaintiffs were paid less than minimum wage; they received tips from customers; and the defendants' retained 2.5% of the food and beverage sales made by each server.  (Niec Dep. at 11, lns. 15-19) (S. Campbell Dep. at 30, lns. 8-10) (Gibby Dep. at 31, lns. 4-7) (Cross Dep. at 47, lns. 14-18)

The issue is whether defendants' policy of retaining a portion of plaintiffs'

tips in an amount of 2.5% of the servers' total food and beverage sales, was a valid

"tip pool." Plaintiffs submit that under the facts of this case, as a matter of law, the

defendants' policy did not constitute a valid "tip pool." Thus, plaintiffs are entitled

to recover the difference between their sub-minimum wage of $2.15 and the

minimum wage of $5.15.

### a. Defendants did not inform plaintiffs of the FLSA provisions for taking a tip credit.

Defendants cannot show that they informed plaintiffs of the provisions of the

FLSA for taking a tip credit. *Kilgore, Id.* Plaintiff Cross testified that during her

employment from 2002 through 2006, questions about the tip policy were raised by

various servers. (Cross Dep. at 52-61) Defendant Campbell never explained the

policy in response to these questions. He either "blew it off" or simply stated that

the servers had to pay the tip out if they wanted to work there. (Cross Dep. at 61,

lns. 7-13; 62, lns. 10-13)  On other occasions he told the servers that he would have

go out of business unless the tip out was paid to The Ridge.  (Cross Dep. at 62, lns.

10-13) Plaintiff Gibby testified that she did not know where the money was going,

it seemed odd and "not right."  (Gibby Dep. at 32, lns. 68-69)

In fact, defendant Campbell concedes that until plaintiff Cross threatened to

sue The Ridge he had never looked at the law and when, thereafter, he looked at

the law, it was the first time he had heard of the concept of a tip credit under the

Fair Labor Standards Act. (S. Campbell Dep. at 117, lns. 20-25) He also testified that he told one of the servers "Reanna" that he did not know how the "tip credit" was supposed to work. (S. Campbell Dep. at 120, lns. 14-17) (Pla. Ex. 11)

If Campbell did not know what the "tip credit" provisions of the FLSA were, it is impossible for him to have explained the provisions to his tipped employees. *See Bonham v. Copper Cellar Corp*., 476 F.Supp. 98, 101 (E.D.Tenn. 1979) ("[V]ague references to conversations about the minimum wage" and "[a] poster containing some or all of the relevant information apparently… hanging somewhere in the defendants' restaurant"  which  was not prominently displayed and to which employees were not  is inadequate to fulfill the notice requirements); *Pellon v. Business Representation Intern., Inc*., 528 F.Supp.2d 1306 (S.D.Fla. 2007) (Poster containing information required by FLSA is adequate notice of intent to use "tip credit.") In the present case, the defendants had no posters and no written policies of any kind. (S. Campbell Dep. at 63, ln. 11; 64, ln. 4; 92)

Since defendants failed to explain the FLSA tip credit provisions to its employees, they cannot avail themselves of the FLSA provisions to pay less than minimum wage.

**b. Defendants did not have a valid tip pool as defined by the FLSA.**

It is also undisputed that the defendants retained part of plaintiffs' and other servers' tips, in an amount equal to 2.5% of total food and beverage sales made by the server. This policy and practice violates the FLSA unless the defendants had a valid tip pool, which they did not.

For a tip pool to be valid, the money pooled must be distributed to "employees who customarily and regularly receive tips." 29 USCA §203(m). At The Ridge, the money that retained from the servers was paid directly into the restaurant's operating account. (S. Campbell Dep. at 13, lns. 23-25; 23, lns. 19-24; 25, ln. 24-25) (Niec Dep. at 13, lns. 10-13)

There is no evidence that this money was ever distributed to any employee. (S. Campbell Dep. at 38, lns. 14-19)

After the fact, and when threatened with litigation by plaintiffs, the defendants developed a theory that the tips were, in effect, distributed to employees, who customarily and regularly receive tips, because, but for the money accumulated from servers' tips, the restaurant would not have had enough money to meet payroll expenses, including the payroll for food runners and hostesses. (S. Campbell Dep. at 15, lns. 8-16) This alleged method does not meet the FLSA's

requirements for a "tip pool" when the following undisputed facts are considered:

Defendants never kept up with the amount of money that was retained from the servers' tips. (S. Campbell Dep. at 25, lns. 22-25; 26, lns. 1-7)

The Ridge's food and beverage sales varied and the amount withheld from servers tips varied, however, the hostesses' and food runners' pay did not vary. (S. Campbell Dep. at 24, lns. 6-15) (Niec Dep. at 17, lns. 9-12)

The Ridge only used food runners on Friday and Saturday. (S. Campbell Dep. at 92, lns. 6-10) (Gibby Dep. at 32, lns. 24-25; 33, ln. 1) (Cross Dep. at 116, lns. 23-25) The amount that defendant retained from the servers' tips did not change on the nights there were no food runners assisting the servers. (S. Campbell Dep. at 36, lns. 6-9) (Gibby Dep. at 32, lns. 14-24)

The hostesses' pay did not change on those nights that there were no food runners. (S. Campbell Dep. at 36, lns. 11-14)

Defendants did not take into account the amount of money that had been retained when paying the busboys or food runners. (S. Campbell Dep. at 38, lns. 9-13)

Jane Campbell, CEO of Defendant 440 Corp. and also a hostess at The Ridge, didn't know anything about tip sharing until the policy changed in October-November, 2006, at which point she began getting $2.13 per hour plus tip. (J.

Campbell Dep. at 9, lns. 2-6) In fact, she has never talked to defendant Campbell about the tip sharing policy. (J. Campbell Dep. at 10, lns. 11-12)

Finally, Defendant Stephen Campbell thought it was okay to withhold money from the servers regardless of where the money went. (S. Campbell Dep. at 38, lns. 14-19) Unfortunately for the defendants, the FLSA prohibits this conduct. Federal regulation provides:

> whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. 29 CRF 531.35

In an opinion letter the Department of Labor relies upon this regulation in concluding: "Any arrangement whereby a tipped employee agrees that part of his or her tips are to become the property of the employer is inconsistent with the provisions of the FLSA which allow employers to take a tip credit toward wages." (DOL Opinion letter, June 6, 2006, FLSA2006-21, Attached as Pla. Ex. 24)

Despite the defendants' insistence that they have a tip pool, the facts reflect that the money retained from plaintiffs' and other servers' tips became the property of The Ridge. In fact, The Ridge paid taxes on the 2.5% of food and beverage sales turned over by the servers and included this money in its gross revenues based on advice from their accountant. (S. Campbell Dep. at 16, lns. 11-24) Defendants say

they rely on a letter from their accountant which advises The Ridge that "[a]ny amount the company **retains** must be reported as income by the company." (Pla. Ex. 1) (emphasis added) If defendants did not retain these tips, then it would not have paid taxes on the money. Thus, their protestations now that they did not retain the tips ring hollow.

"Congress gave employers of tipped employees a simple choice:  either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage." *Chung, et al., v. The New Silver Palace Restaurant, Inc.,* 246 F.Supp.2d 220, 230 (SD NY 2002).   The defendants had a simple choice to make, comply with the law on tip pools or pay minimum wages. Instead of complying with the law, they chose to take advantage of their tipped employees and retain money to increase the profitability of the restaurant. Such conduct violates the FLSA and plaintiffs' deserve compensation for this violation of the law.

If the defendants really used the retained money to compensate the food runners and hostesses, they had additional responsibilities under the FLSA to record any payments made to the employees from the tip pool. Employers who compensate their employees through tips and tips shares are required to maintain additional documentation including:

(a) With respect to each tipped employee whose wages are determined pursuant to section 3(m) of the Act, the employer shall maintain and preserve payroll or other records containing all the information and data required in § 516.2(a) and, in addition, the following:

(1) A symbol, letter or other notation placed on the pay records identifying each employee whose wage is determined in part by tips.

(2) Weekly or monthly amount reported by the employee, to the employer, of tips received (this may consist of reports made by the employees to the employer on IRS Form 4070).

(3) Amount by which the wages of each tipped employee have been deemed to be increased by tips as determined by the employer (not in excess of 40 percent of the applicable statutory minimum wage). The amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week.

(4) Hours worked each workday in any occupation in which the employee does not receive tips, and total daily or weekly straight-time payment made by the employer for such hours.

(5) Hours worked each workday in occupations in which the employee receives tips, and total daily or weekly straight-time earnings for such hours.

29 C.F.R. 516.28(a).

Thus, *if* the defendants were paying the food runners and hostesses in part from the retained tips, they were required to keep the above information on each of the food runners and hostesses, which they did not do. (Pla. Ex. 9, 10, 17, 18) There is a simple reason that defendants did not maintain these records: these employees were not paid tips through the tip pool. Rather the defendants simply

kept the retained tips in order to increase gross revenues.

Because the defendants failed to comply with the FLSA's requirements for taking a tip credit, they are liable to the plaintiffs for the full minimum wage. It does not matter that plaintiffs ended up making more than minimum wage despite the invalid tip pool. As the Fourth Circuit has pointed out "if you precisely follow the language of 3(m) and fully inform your employees of it, you may obtain a …credit from the receipt of tips towards your obligation to pay the minimum wage. The corollary seems obvious and unavoidable: if the employer does not follow the command of the statute he gets no credit." *Richard v. Marriott Corp.,* 549 F.2d. 303, 305 (4th Cir. 1997) *cert denied* 433 U.S. 915, 97 S.Ct. 2988, (U.S. 1977). Defendants failed to follow the law and now they must suffer the consequences.

For these reasons, plaintiffs urge this Court to grant summary judgment as to defendants' liability for failing to pay them minimum wage and for failing to have a legal tip pool.

**C.      Defendant Campbell is individually liable under the FLSA.**

Under the FLSA an employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). As the Eleventh Circuit in *Patel v. Wargo* 803 F.2d 632, 637, 638 (11th Cir.

1986) stated:

> "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir.1983) (citing cases). *Accord Donovan v. Grim Hotel Co.,* 747 F.2d 966, 972 (5th Cir.1984), *cert. denied,* 471 U.S. 1124, 105 S.Ct. 2654, 86 <u>L.Ed.2d 272 (1985)</u>.

In the present case, it is undisputed that defendant Stephen Campbell, as manager of The Ridge, made all the decisions relating to the operation of The Ridge, including the decisions relating to retaining money from the servers' tips. (S. Campbell Dep. at 9, lns 2-4; 14, lns. 1-12; 68, lns. 17-21) (J. Campbell Dep. at 8, lns. 16-23) (Niec Dep. at 10, lns. 19-21)

Even though defendant Campbell's sister, Jane Campbell, is CEO and owns one hundred percent of the stock in defendant 440 Corp., she has no authority and makes no decisions relating to the operation of The Ridge. Jane Campbell's only role with The Ridge is strictly to be a hostess for the restaurant. In fact, Jane Campbell has never received any money from the corporation other than an hourly wage when she works as a hostess. (S. Campbell Dep. at 9, lns. 2-10) (Niec Dep. at 114, ln. 25; 115, lns. 1-5) (J. Campbell Dep. at 4, lns. 20-25; 5, lns 1-8) Jane Campbell never knew anything about the tip share arrangements until she was told in October-November, 2006, that her pay was being changed to $2.13 per hour;

that the rest of her pay would come from a "tip out;" and that this was the result of a change in the law. (J. Campbell Dep. at 9, lns. 2-22)

Mike Sard, an attorney, was the defendant corporation's secretary and only other officer, but he had no day to day responsibility for The Ridge. He only handled the licenses and acted as an agent. (S. Campbell at 6, lns. 22-25; 7, lns. 14-17)

The only person who has any authority at the Ridge is defendant Stephen Campbell. He makes all decisions for the restaurant, makes all personnel policies and decision and consults with no one. Most importantly, he made all the decisions relating to the retaining money from the servers' tips (S. Campbell Dep. at 11, lns. 23-25; 12, lns. 1-3; 64, lns. 10-12). (S. Campbell Dep. at 14, lns. 1-12; 68, lns. 17-21) (J. Campbell Dep. at 8, lns. 16-23) He alone "has operational control of significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, --- F.3d ---, 13 Wage & Hour Cas.2d 394, 2008 WL 220070, p. 9 (11th Cir. Jan. 29, 2008) (Attached as Pla. Ex. 25) Thus, he may be held liable under the FLSA.

The situation here is similar to the circumstances in *Preston v. Settle Down Enterprises, Inc., et al*, 90 F.Supp.2d 1267, 1275 (ND Ga. 1999), where the district

court ruled as a matter of law that a consultant hired by Settle Down Enterprises, Inc . was individually liable for violations of the FLSA due to his day to day operation of the business. At The Ridge, Defendant Campbell alone was responsible for the day to day operation of the restaurant and made the decisions which are in question in this litigation.

For these reasons, plaintiffs urge this Court to find Defendant Campbell individually liable for the violations of the FLSA.

## IV. Conclusion

For the reasons set forth above, together with the Statement of Undisputed Material Facts, plaintiffs request that this Court grant summary judgment for plaintiffs holding both defendants liable for violating the FLSA. Plaintiffs further request that a trial be scheduled to determine (1) the amount of plaintiffs' lost wages; (2) whether a two or three year statute of limitations should apply; and (3) whether plaintiffs should be awarded liquidated damages.

Respectfully submitted this 10th day of March, 2008.

> s/Janet E. Hill, Esq.
> Janet E. Hill, Esq.
> Georgia Bar No. 354230
> Attorney for Plaintiff
> HILL & ASSOCIATES, P.C.
> 1160 S. Milledge Ave, Suite 140
> Athens, Georgia 30605
> Telephone: (706) 353-7272
> Fax: (706) 549-8446
> E-mail: janetehill@bellsouth.net

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| JULIE CROSS and MISTIE GIBBY, | ) | |
| on behalf of themselves and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. |
| v. | ) | 2-06-CV-0191-WCO |
| | ) | |
| 440 CORP. d/b/a THE RIDGE – GREAT | ) | |
| STEAKS & SEAFOOD, STEPHEN | ) | |
| CAMPBELL and JANE CAMPBELL, | ) | |
| | ) | |
| Defendants. | ) | |

## RULE 7.1D CERTIFICATION
## AND CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was prepared in Times New Roman, 14 point font, and is in compliance with NDGa Local Rules 5.1B and 5.1C.

I hereby certify that on March 10, 2008, I electronically filed this **PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

Bradley T. Adler

badler@fmglaw.com

Respectfully submitted this 10[h] day of March, 2008.

s/Janet E. Hill, Esq.
Janet E. Hill, Esq.
Georgia Bar No. 354230
Attorney for Plaintiff
HILL & ASSOCIATES, P.C.
1160 S. Milledge Ave, Suite 140
Athens, Georgia 30605
Telephone: (706) 353-7272
Fax: (706) 549-8446